UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES ZACHMAN,

      Plaintiff,

v.

JOHNSON & JOHNSON, et al.,

      Defendants.

Case No.  15-cv-04285-RS

**ORDER GRANTING MOTION TO REMAND AND DENYING AS MOOT MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION

In this pharmaceutical products liability case, Plaintiff James Zachman avers he suffered injuries and damages arising from his use of the prescription medication Levaquin.  After defendants Johnson & Johnson, Janssen Research & Development, LLC ("Janssen Research"), Janssen Pharmaceuticals, Inc., and McKesson Corporation ("McKesson") removed on the basis of diversity jurisdiction, Zachman filed this motion to remand, arguing the case lacks complete diversity.  Defendants countered that McKesson was fraudulently joined and removal of the case was therefore proper.  Because Zachman provides a viable basis for his claims, McKesson's joinder is not fraudulent, the case lacks complete diversity, and the motion to remand to the Superior Court for the County of San Francisco is granted.  Defendants' motion for judgment on the pleadings is denied as moot.  Pursuant to Civil Local Rule 7-1(b), the motions set for December 10, 2015 are suitable for disposition without oral argument, and the hearing will be vacated.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II. BACKGROUND[1]

On or about May 7, 2009, Plaintiff James Zachman left his home in Toluca Lake, California and went to a Rite Aid Pharmacy in nearby Beverly Hills.  There, he purchased a prescription drug known as "Levaquin," a broad-spectrum fluoroquinolone antibiotic used to treat lung, sinus, skin, and urinary tract infections.  Zachman subsequently used the medication as directed, but some time later, began experiencing the symptoms of peripheral neuropathy, a nerve disorder that can impair sensation, movement, gland function, and other aspects of health.  After undergoing additional testing, his diagnosis was confirmed.

The instant dispute centers on allegations that the creators, distributors, and marketers of Levaquin misrepresented and failed to warn consumers of the risk of developing peripheral neuropathy.  Zachman avers the scientific evidence establishes a clear association between Levaquin and an increased risk of long-term and sometimes irreversible peripheral neuropathy.  Zachman argues the defendants knew or should have known of the risks associated with Levaquin, yet failed appropriately and adequately to warn patients and prescribing physicians.  Zachman points out that language about the risk of peripheral neuropathy was buried at the bottom of a long list of adverse reactions included on the Levaquin label.  He also faults defendants for failing to disseminate a "Dear Doctor" letter to physicians, and for failing to disclose the risk of permanent nerve damage when promoting Levaquin.

On August 13, 2015, Zachman commenced this action in the San Francisco County Superior Court against Johnson & Johnson, Janssen Research, and Janssen Pharmaceuticals—the alleged manufacturers and marketers of Levaquin—along with McKesson Corporation, who allegedly distributed the Levaquin Zachman ingested.  Zachman asserts claims for (1) strict

---

[1] The factual background is based on the averments in the complaint, which are assumed to be true for the purpose of assessing whether joinder was proper. *See Thomas v. Aetna Health of Cal., Inc.*, No. 1:10–cv–01906–AWI–SKO, WL 2173715, at *5 (E.D. Cal. June 2, 2011) ("In ruling on a motion for remand where fraudulent joinder is alleged, a court must evaluate the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff") (citations omitted).

United States District Court
Northern District of California

liability, (2) products liability on a failure to warn theory, (3) negligence, (4) breach of express warranty, (5) breach of implied warranty, (6) fraud, (7) negligent misrepresentation, and (8) fraudulent concealment.  Defendants removed this action on September 18, 2015, and filed a motion for judgment on the pleadings roughly one month later.  Zachman's motion to remand soon followed.

### III. LEGAL STANDARD

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Accordingly, removal jurisdiction exists where a case filed in state court presents a federal question or involves diversity of citizenship and meets the statutory amount in controversy. *See* 28 U.S.C. §§ 1331, 1332.  Courts strictly construe the removal statute against finding federal subject matter jurisdiction, and the defendant bears the burden of establishing the basis for removal. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). Where doubt exists regarding the right to remove an action, it should be resolved in favor of remand to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

Although complete diversity is required under § 1332, district courts may ignore the fraudulent joinder of non-diverse defendants in determining whether diversity jurisdiction exists. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).  Fraudulent joinder "is a term of art" that "does not reflect on the integrity of plaintiff or counsel." *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) (citation omitted).  Joinder is fraudulent "[i]f the plaintiff fails to state a claim against a resident defendant, and the failure is obvious according to the settled rules of the state." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

The standard for determining whether a defendant is fraudulently joined is similar to that of a 12(b)(6) motion to dismiss. *See Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975) ("Inasmuch as appellant's case against the individual defendants was sufficient to withstand a

1  dismissal motion under [Rule] 12(b)(6), the joinder of claims against them was not fraudulent . . .

2  .").  In determining whether a removed claim is viable, courts typically "look only to a plaintiff's

3  pleadings . . . ." *Ritchey*, 139 F.3d at 1318 (citation and quotation marks omitted).  "The review of

4  the complaint, however, is constrained to the facts actually alleged therein; it does not extend to

5  facts or causes of action that *could* be alleged via an amended complaint." *Pasco v. Red Robin*

6  *Gourmet Burgers, Inc.*, No. 1:11–cv–01402–AWI–SKO, 2011 WL 5828153, at *3 (E.D. Cal. Nov.

7  18, 2011) (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989))

8  (emphasis in original). When assessing whether joinder was proper, the court may go "somewhat

9  further" by allowing a defendant to present additional facts demonstrating joinder was fraudulent.

10  *See Ritchey*, 139 F.3d at 1318.

### IV. DISCUSSION

12      Zachman does not dispute the amount-in-controversy requirement has been met, or that

13  diversity of citizenship exists in relation to Johnson & Johnson, Janssen Research, and Janssen

14  Pharmaceuticals.  Nor do defendants dispute that McKesson, a citizen of California, would destroy

15  complete diversity if properly joined.  The parties contest, however, whether McKesson, who is

16  named in all eight of the claims in the complaint, is a proper party to this action.  According to

17  defendants, the complaint fails to state any cognizable claim against McKesson.

### A. Preemption

19      Defendants begin by arguing McKesson cannot be held liable under any theory of recovery

20  because Zachman's claims stem from a failure to warn, yet federal law precludes McKesson from

21  changing Levaquin's label.  Defendants' argument relies on *Mutual Pharmaceutical Corporation,*

22  *Inc. v. Bartlett*, 133 S. Ct. 2466 (2013), where the Supreme Court held state-law design-defect

23  claims based on inadequate warnings against generic manufacturers are preempted by federal law.

24  *Id.* at 2470.  Zachman responds by noting as a threshold matter the "Ninth Circuit has determined

25  it is inappropriate to examine whether a plaintiff's claims are preempted by federal law on a

26  motion to remand." *D.A. ex rel. Wilson v. McKesson Corp.*, No. 1:13–cv–01700–LJO–JLT, 2014

27  WL 202738, at *10 (E.D. Cal. Jan. 17, 2014) (citing *Hunter v. Philip Morris USA*, 582 F.3d 1039,

28

United States District Court
Northern District of California

1045 (9th Cir. 2009)).  Turning to the merits, Zachman highlights an array of authority finding strict liability for failure to warn viable in the present context.[2]

Zachman's argument is more persuasive.  According to the Ninth Circuit, "[w]hen a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state.'" *Hunter*, 582 F.3d at 1045 (quoting *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)).  Rather, "the preemption question requires an inquiry into the merits of the plaintiff's claims . . .  and an analysis of federal law." *Id.*  In those circumstances, "the defendant has failed to overcome the 'strong presumption against removal jurisdiction.'" *Id.* (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)); *see also Wilson*, 2014 WL 202738, at *4 ("Where the moving party must resort to defenses to the merits of the action to demonstrate the defendant was fraudulently named, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is obvious according to the settled rules of the state.").

**B. Strict Liability**

Zachman's first claim for relief alleges all defendants, including McKesson, are strictly liable for his injuries.  To make out a strict liability failure to warn claim, a plaintiff must allege (1) "the defendant manufactured, distributed, or sold the product"; (2) "the product had potential risks that were known or knowable at the time of manufacture or distribution, or sale"; (3) "that the potential risks presented a substantial danger to users of the product"; (4) "that ordinary consumers would not have recognized the potential risks"; (5) "that the defendant failed to

---

[2] *See, e.g.*, *Moorhouse v. Bayer Corp.*, No. 08–01831 SBA, 2008 WL 2477389, at *5 (N.D. Cal. June 18, 2008) ("In light of the general rule under California law that distributors of defective products are strictly liable, the lack of any authority exempting distributors from liability for failure to warn in the prescription drug context inclines this Court against a finding of frivolity."); *Wilson*, 2014 WL 202738, at *9 (noting the court would have to unilaterally extend two Supreme Court decisions to find plaintiffs' failure-to-warn claims preempted); *Norris v. AstraZeneca Pharms., LP*, No. 12cvo836 JM (BLM), 2012 WL 1944760, at *2 (S.D. Cal May 30, 2012) ("The general rule in California is that both manufacturers and distributors are strictly liable for injuries caused by a defective product.").

adequately warn of the potential risks"; (6) "that the plaintiff was harmed while using the product in a reasonably foreseeable way"; (7) "and that the lack of sufficient warnings was a substantial factor in causing the plaintiff's harm." *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011–12 (N.D. Cal. 2009) *aff'd sub nom. Rosa v. Taser Int'l, Inc.*, 684 F.3d 941 (9th Cir. 2012) (quoting Jud. Council of Cal. Civ. Jury Instruction No. 1205).

Here, Zachman avers McKesson distributed Johnson & Johnson pharmaceuticals, including Levaquin. Compl. ¶ 22.  Zachman also avers McKesson distributed the specific Levaquin he ingested because McKesson distributes pharmaceuticals to Rite Aid and he filled his prescription at the Rite Aid in Beverly Hills. *See* Compl. ¶ 32–33.  Next, citing the various scientific reports, Zachman alleges all defendants knew or should have known that Levaquin is associated with an increased risk of developing irreversible peripheral neuropathy, yet they failed appropriately and adequately to warn him of the associated risks. Compl. ¶ 43, 44.  Zachman contends the Levaquin he ingested was defective at the time it was manufactured and distributed. Compl. ¶ 75.  Finally, Zachman asserts he was harmed because he developed peripheral neuropathy, and he cites the lack of sufficient warnings as the proximate cause. Compl. ¶ 81, 86, 94–95.

Defendants' first attack is to argue there are no specific allegations concerning McKesson as to any claim in the complaint, including this one.  As detailed in the previous paragraph, however, defendants are incorrect.

Defendants next insist that, unlike previous fraudulent joinder cases involving McKesson, they offer "affirmative evidence—not just argument—refuting each of Plaintiff's substantive allegations." Opp'n at 2:5–10.  Specifically, defendants supply five declarations detailing McKesson's limited role "as a conduit for delivering some Levaquin to various pharmacies," Opp'n at 14:16–19, and proclaiming it unlikely McKesson distributed the Levaquin Zachman ingested, Opp'n at 2:12–14.  While informative, the declarations offer defendants little help because they confirm McKesson's role as a Levaquin distributor without foreclosing the possibility that McKesson distributed Zachman's medication.

1        Recognizing as much, defendants next argue California law forecloses any viable claim

2  against a "mere conduit" like McKesson. Opp'n at 2:17–20.  Defendants rely on *Bay Summit*

3  *Community Association v. Shell Oil Company*, 51 Cal. App. 4th 762 (1996), which held a

4  defendant involved in the marketing or distribution process is strictly liable if (1) "the defendant

5  received a direct financial benefit from its activities and from the sale of the product"; (2) "the

6  defendant's role was integral to the business enterprise such that the defendant's conduct was a

7  necessary factor in bringing the product to the initial consumer market"; and (3) "the defendant

8  had control over, or a substantial ability to influence, the manufacturing or distribution process."

9  *Id.* at 776.  Defendants concede the first element of the three-prong test is likely met, but maintain

10  there is no possible way the second and third prongs can be satisfied as to McKesson.

11  Specifically, McKesson's conduct was not "necessary" to bring Levaquin to the initial consumer

12  market because McKesson did not manufacture the drug or seek FDA approval—it merely

13  distributed the medication alongside other corporations.  For the same reasons, defendants contend

14  McKesson did not "control," or have the ability to control, the marketing and distribution of

15  Levaquin.

16        Zachman counters by asserting the *Bay Summit* test, as explained in *Arriaga v. CitiCapital*

17  *Commerical Corporation*, 167 Cal. App. 4th 1527 (2008), applies only to entities involved in the

18  marketing process but *outside* the vertical chain of distribution.  Zachman contends the

19  declarations establish McKesson is *within* the chain of distribution, so the only issue is whether a

20  distributor may be held strictly liable under California law.  On that point, Zachman provides a

21  welter of authority for the proposition that every participant in the chain of distribution is

22  potentially liable for a defective product.[3]  Defendants characterize Zachman's attempt to

23  "narrow" the law as incorrect, and insist the proper question concerns the sufficiency of their

24

25  [3] *See, e.g.*, *Bailey v. Safeway, Inc.*, 199 Cal. App. 4th 206, 2013 (2011) ("The doctrine of strict products liability imposes fault on all participants in the chain of distribution of a defective

26  product."); *Bostick v. Flex Equip. Co., Inc.*, 147 Cal. App. 4th 80, 88 (2007); *Jimenez v. Superior Court*, 29 Cal. 4th 473, 477–78 (2002); *Edwards v. A.L. Lease & Co.*, 46 Cal. App. 4th 1029, 1033

27  (1996); *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 994 (1991).

28

United States District Court
Northern District of California

evidence showing the *Bay Summit* test cannot be met.

Importantly, for McKesson to prevail in showing its joinder here was fraudulent, its interpretation of *Bay Summit* must be sufficiently settled that it is "obvious" that Zachman's strict liability claim is meritless.  Defendants cannot meet this standard.  Contrary to their argument, several courts have concluded the *Bay Summit* test does not apply to defendants, like McKesson here, who are within a defective product's vertical chain of distribution. *See, e.g.*, *McCarty v. Johnson & Johnson*, No. 1:10–cv–00350 OWW–DLB, 2010 WL 2629913, at *4 (E.D. Cal. June 28, 2010) ("This [*Bay Summit*] test, however, applied to participants *outside* the chain of distribution."); *Jones v. Johnson & Johnson*, No. cv 13–7684 PA (JCGx), 2013 U.S. Dist. LEXIS 151067 (C.D. Cal. October 21, 2013) (citing *Bay Summit* for the proposition that "strict products liability extends to nonmanufacturing parties outside the vertical chain of distribution of a product, which play an integral role in the producing and marketing enterprise of a defective product").

*Arriaga*, moreover, appears to support Zachman's position.  *Arriaga* describes how courts have applied strict liability to entities "involved in the vertical distribution of consumer goods" because "[a]lthough not necessarily involved in the manufacture or design of the final product, these defendants were responsible for passing the product down the line to the consumer and are able to bear the cost of compensating for injuries." 167 Cal. App. 4th at 1535.  Then, relying on *Bay Summit*, *Arriaga* explains "[s]trict liability also applies where a nonmanufacturing party is 'outside the vertical chain of distribution' of the product, but plays 'an integral role in the producing and marketing enterprise of a defective product and profit[s] from placing the product into the stream of commerce.'" *Id.* (quoting *Bay Summit*, 51 Cal. App. 4th at 773).  Next, *Arriaga* acknowledges the imposition of strict liability is not limitless, and it cites the *Bay Summit* factors as relevant to determining the ultimate bounds. *Id.*  In short, *Arriaga* directly implies the *Bay Summit* test is applicable only to entities outside the vertical chain of distribution—unlike McKesson in the instant case.

Because entities in the vertical chain of distribution can be held liable for defective products under California law, it is not "obvious" that Zachman's strict liability claim as to

McKesson is meritless.[4]  Accordingly, McKesson's joinder is not fraudulent, the case lacks complete diversity, and the motion to remand to the Superior Court for the County of San Francisco must be granted.

### V. CONCLUSION

Defendants have not met their burden to show that Zachman cannot prevail on any of his claims against McKesson. The motion to remand to the Superior Court for the County of San Francisco is granted.[5]  Defendants' motion for judgment on the pleadings is denied as moot.

**IT IS SO ORDERED**.

Dated: November 30, 2015

RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California

---

[4] Given this conclusion, Zachman's other claims for relief need not be reached.

[5] Removal does not appear to have been in bad faith, and Zachman acknowledges as much. *See* Reply to Defs.' Opp'n to Mot. to Remand at 4 n.7 (noting "new" strategy).  Accordingly, Zachman's request for fees and costs under 28 U.S.C. § 1447(c) is denied.